UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

O'MEARA, LLC                                                    CIVIL ACTION

V.                                                              NO. 15-5979

STOKES & SPIEHLER USA, INC.                                     SECTION "F"

ORDER AND REASONS

Before the Court is the defendant, Stokes & Spiehler's, motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. For the following reasons, the motion is GRANTED.

**Background**

This contract dispute arises from the plaintiff's claim for breach of a Master Service Agreement (MSA) in the oil and gas industry. The plaintiff, O'Meara, LLC, hired the defendant, Stokes & Spiehler, to provide engineering and consulting services on a project to convert an oil well into an alternate salt water disposal well. The defendant was responsible for communicating with the State of Louisiana to ensure that the operation complied with a permit issued by the State. The plaintiff contends that Stokes & Spiehler failed to perform its duties in a workmanlike manner, causing the State to reject aspects of the project. The defendant filed a counterclaim seeking recovery of unpaid accounts and attorney fees.

1

The well was located in the inland waters of the Lake Fortuna Field in St. Bernard Parish. All of the work was performed onboard the Suard No. 9, an inland drilling workover rig. During the project, the crew used a separate liftboat at the well site for living quarters. The MSA contains a choice-of-law provision that states:

> **Governing Law:** This agreement and the legal relations among the parties hereto shall be governed and construed in accordance with the General Maritime Law of the United States whenever any performance is contemplated in, on or above navigable waters whether onshore or offshore. In the event that General Maritime Law is held inapplicable, the laws of the state where the work is being performed shall apply.

The plaintiff invokes federal admiralty jurisdiction under 28 U.S.C. § 1333. The defendant contends, however, that the Court does not have admiralty jurisdiction because the MSA is an oil and gas contract, not a maritime contract. The outcome of this motion turns on whether the MSA between the parties is a maritime contract or an oil and gas contract.

I.

"The attempt to determine whether a contract, particularly one linked to offshore gas and oil production, is governed by state or maritime law has led to much confusion." Davis & Sons Inc. v. Gulf Oil Corp., 919 F.2d 313, 315 (5th Cir. 1990). Whether a contract constitutes a maritime contract depends on the "nature and character of the contract, rather than on its place of

2

execution or performance." Id. at 316. The parties agree that the relevant legal analysis announced in Davis is determinative as to whether the MSA is a maritime contract.

In Davis, the Fifth Circuit applies a two-part inquiry: "Determination of the nature of a contract depends in part on historical treatment in the jurisprudence and in part on a fact-specific inquiry." Id. The Court must consider six factors in characterizing the contract: "1) what does the specific work order in effect at the time of injury provide? 2) what work did the crew assigned under the work order actually do? 3) was the crew assigned to work aboard a vessel in navigable waters? 4) to what extent did the work being done relate to the mission of that vessel? 5) what was the principal work of the injured worker? and 6) what work was the injured worker actually doing at the time of injury?" Id. at 316.

## II.

"In some cases, the historical treatment in the jurisprudence may obviate the need for a fact-specific inquiry." Devon Louisiana Corp. v. Petra Consultants, Inc., 247 Fed. Appx. 539, 544 (5th Cir. 2007). This case does not appear to be one of them. As this Court has observed:

> "The courts' interpretation of contracts involving work on jack-up rigs, and similarly drillships, has been fluent. In some instances, courts have found that, although the obligation under the contract was inherently non-maritime in nature, the contract was

3

>    maritime because the use of the rig-vessel was central to the work performed under the contract. Other courts, however, have found that a nonmaritime obligation forms a non-maritime contract, regardless of the fact that the work was performed on a rig-vessel."

Pitre v. Custom Fab of Louisiana, LLC, 2013 WL 4499029, 12-1074 (E.D. La. Aug. 20, 2013)(Milazzo, J.). The parties do not provide any cases in this Circuit that address precisely the type of work performed by the defendant under the MSA. Thus, the Court engages in further analysis, applying the Davis factors.

                                III.

The first two Davis factors analyze the specific work that was ordered under the contract, and the work the defendant actually did. In the complaint, the plaintiff explains:

>    Stokes & Spiehler were retained to plan, coordinate and oversee the conversion of Well No. 28 to an alternate salt water disposal well pursuant to a permit obtained by Tina Jumonville of Stokes & Spiehler from the Louisiana Office of Injection and Mining.
>
>    Stokes & Spiehler was responsible for coordinating and communicating with the State to ensure that the operation complied with the permit and all other State requirements and regulations.

This work is non-maritime in nature. The defendant was hired to provide oil and gas services and to ensure compliance with a permit issued by a state regulatory body that oversees injection and mining. These factors suggest the contract is non-maritime.

The third factor asks whether the work was performed onboard a vessel in navigable waters. Here, the answer is yes. The work to

convert the well was performed onboard the Suard No. 9, undisputedly a marine vessel. Further, the parties agree that the well site was located in Louisiana's inland navigable waters. This factor weighs in favor of a finding that the contract is maritime in nature.

The fourth factor addresses the link between the work being done and the mission of the vessel. The plaintiff correctly points out that the vessel, namely, the Suard No. 9, was critical to completing the well conversion work. The specific work that the defendant was contracted to perform - engineering and consulting services - was likewise integral to the overall completion of the project. Aside from sharing the same ultimate goal, however, the vessel was not central to the defendant's obligations under the contract. For example, the defendant points out that coordinating with the State to obtain the permit and designing the well head that allegedly failed to comply with industry standards took place far off-site.

The final two factors focus on the work directly related to the alleged "injury." Here, the alleged injury is a breach of contract. Thus, the Court considers whether the alleged breach relates to work that is maritime in nature. In the complaint, the plaintiff pleads:

> The plans for the work submitted to the State by
> Stokes & Spiehler on behalf of O'Meara required that the

5

>well be "squeezed" at various points to insure that the disposal occurred at the proper zone.
>
>Stokes & Spiehler improperly communicated these squeeze perforations to the on-site supervisor of the operations, resulting in multiple squeeze perforations being completed at the incorrect depth.
>
>As a result of this lapse in communication, Stokes & Spiehler's initial efforts to reconfigure the well were rejected by the State because they failed to comply with the permitted plan.
>
>Further, after completing the initial plugging and perforation of the well, Stokes & Spiehler installed an inappropriate well head assembly that failed to comport with standard industry practices for operations in open waters.

In short, the alleged breaches are: 1) failing to communicate the correct perforations to the on-site supervisor, which led to an initial rejection of the project; and 2) installing the wrong well head assembly. Neither involve conduct that are maritime in nature. Rather, the alleged breaches involve work that is more closely associated with the oil and gas industry. Importantly, the alleged injuries did not necessarily occur on the vessel, nor are they obviously linked in some way to the defendant's presence on the vessel.

Finally, the parties agree that the choice-of-law provision in the MSA has no impact on the Court's subject matter jurisdiction. Indeed, the provision contemplates the possibility of a court finding maritime law inapplicable.

In this case, the weight of the Davis factors supports a finding that the MSA is a non-maritime contract. The nature and character of the services provided by the defendant and the injury alleged by the plaintiff are more closely associated with an oil and gas contract. Accordingly, the Court finds that the contract between the parties is non-maritime, and thus the Court lacks admiralty subject matter jurisdiction.

IT IS ORDERED that Stokes & Spiehler's motion to dismiss is GRANTED.

New Orleans, Louisiana, May 18, 2016

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE